IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

JODY O'NEIL HARRISON           :

    Plaintiff,                :

vs.                            :
                                                      CIVIL ACTION 09-0283-KD-C
                                             :
GRANTT CULLIVER, et al.,
                                             :

    Defendants.

## REPORT AND RECOMMENDATION

Plaintiff, an Alabama prison inmate proceeding *pro se* and *in forma pauperis* filed a Complaint under 42 U.S.C. § 1983. This action has been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4), and is now before the Court on the Motion for Summary Judgment of Defendants, Warden Grantt Culliver,[1] Sylvester Folks, David Craft and Allen Lang (Docs. 34, 35) and Plaintiff's various responses and filings in opposition thereto (Docs. 41, 52, 73, 74). Upon consideration of these documents and all other pertinent portions of the record, it is recommended that Defendants' Motion for Summary Judgment be granted and that Plaintiff's action be dismissed with prejudice. Furthermore, Plaintiff's pending motions (Docs. 36, 37, 70, 75) should, as a result of the adoption of this Report and Recommendation, be denied as MOOT.

---

[1] At the time of Plaintiff's Complaint, Grantt Culliver was a Correctional Warden III at Holman, however, at the time of the filing of his affidavit, Mr. Culliver was employed by the Alabama Department of Corrections as an Institutional Coordinator. (Doc. 35 at 1).

I. PROCEDURAL BACKGROUND

Plaintiff filed the present § 1983 action on May 21, 2009, against Defendants Culliver, Folks, Craft and Lang. (Doc. 1). Subsequently, on November 25, 2009, Plaintiff amended his complaint to add as additional Defendants Dr. Tesemma, Dr. Robert Barnes, Donny Myers, Sylvia Hicks, Dr. Hugh Hood, and Debra Poindexter. (Doc. 10). Waivers of service were returned by Defendant Lang on April 1, 2010, by Defendant Culliver on April 13, 2010, and by Defendants Folks and Craft on April 14, 2010. (Docs. 18-20). Waivers of service were returned by Defendants Hood, Poindexter, Hicks, and Myers on May 7, 2010.[2] (Doc. 22).

An answer and special report were filed by Defendants Hicks, Hood, Myers, and Poindexter on May 12, 2010, (Docs. 23, 24), and the Court converted the answer and special report to a Motion for Summary Judgment on May 14, 2010. (Doc. 25). Defendants Culliver, Folks, Craft, and Lang filed an answer and a special report on May 28, 2010 (Docs. 34, 35) and those pleadings were then converted into a Motion for Summary Judgment on July 21, 2010. (Doc. 42).

On September 15, 2010, Plaintiff filed a Motion to Dismiss his claims against Defendants Hood, Barnes, Tesemma, Myers, Hicks, and Poindexter. (Doc. 55). On December 21, 2010, the Court ordered that Plaintiff's claims against Defendants Hood, Myers, Hicks and Poindexter were dismissed without prejudice. (Docs. 63, 64).

The issues have now been fully briefed and the matter taken under submission.

II. FINDINGS OF FACT

On August 6, 2008, at approximately 3:10 p.m., while incarcerated at Holman Correctional Facility ("Holman"), Plaintiff was critically assaulted by another inmate in

---

[2] Requests for waivers of service for Dr. Barnes and Dr. Tesemma were returned as they no longer work for Correctional Medical Services. (Doc. 22).

the area of the prison known as the "back hallway." (Doc. 1 at 18, Complaint; Doc. 40 at 16, Plaintiff's Objection to Defendants' Motion to Dismiss). According to Plaintiff, as he was proceeding along with other inmates of E-Dorm into the "open air areaway" headed toward the back hallway's double doorway, there was no visible security personnel within his view. (Doc. 1 at 18). Once in the back hallway, Plaintiff proceeded approximately 125 feet where he took his place in the medical prescription pick-up line, waiting his turn to be called to the prescription pick-up window located on Holman's main hallway. (*Id.*).

As Plaintiff was standing in line, another inmate, Dale Pounders, walked into the back hallway area from the "open air areaway," and cut Plaintiff's throat with a "clandestinely made utility Razor Knife." (*Id.*). Pounders then blocked the gate area, preventing Plaintiff from proceeding to the main hall for assistance. Plaintiff was forced to turn and run back down the back hallway and to the outside. (*Id.* at 18-19). According to Plaintiff, another inmate, Roy Harvell, came to his aid, helping him to Correctional Officer Brazil, who "saw Plaintiff standing at a locked gateway area connecting Holman's Main Hall with a separate building section." (Doc. 1 at 19). Plaintiff was then assisted to the prison infirmary, where the nurses performed "emergency life saving techniques in heroic effort" to save Plaintiff's life. (*Id.* at 19-20).

Initially, Plaintiff was transferred to Atmore Community Hospital, where, according to Plaintiff, emergency room physicians stabilized his neck wound. (*Id.* at 20). Life Flight Emergency Helicopter was also called by the prison infirmary and after arrival at Atmore Community Hospital, transported Plaintiff to the University of South Alabama Medical Center in Mobile, Alabama. (*Id.*). As a result of this attack, Plaintiff suffered a life-threatening cut to his neck. (Doc. 1 at 18-20, 57, Discharge Summary).

## III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." *Fed. R. Civ. P.* 56(a). Summary judgment should be granted when, "after an adequate time for discovery, a party fails to make a showing sufficient to establish the existence of an essential element of that party's case." *See McDowell v. Brown*, 392 F.3d 1283, 1288 (11th Cir. 2004) (citations omitted).

All issues of material fact are first resolved in favor of the plaintiff, followed by a determination of whether the defendant is entitled to judgment as a matter of law under that version of the facts. *McDowell*, 392 F.3d at 1288 (citing *Durruthy v. Pastor*, 351 F.3d 1080, 1084 (11th Cir. 2003)). There exists no genuine issue of material fact, and summary judgment is due to be granted, when "the evidence could not lead a rational fact-finder to find for the nonmoving party, and where the nonmoving party fails to make a sufficient showing to demonstrate an element essential to that party's case, on which that party bears the burden of proof at trial." *McDowell*, 392 F.3d at 1288-89 (citing *Celetex Corp. v. Catrett*, 477 U.S. at 322-23; and *Holbrook v. City of Alpharetta*, 112 F.3d 1522, 1525-26 (11th Cir. 1997). "[G]enuine disputes are 'those in which the evidence is such that a reasonable jury could return a verdict for the non-movant [and] [f]or factual issues to be considered genuine, they must have a real basis in the record'." *McDowell*, 392 F.3d at 1289 (quoting *Mize v. Jefferson City Bd. of Educ.,* 93 F.3d 739, 742 (11th Cir. 1996). In addition, plaintiff must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file," establish that genuine issues of material fact exist to be resolved at trial, because plaintiff bears the burden of proof at trial. *Fed. R. Civ. P.* 56(e); *Celotex*, 477 U.S. at 324; *Freeman v. Town of Eatonville, Fla.*, 2006 WL 3078928, *2 (11th Cir. November 1, 2006).

It is well established that summary judgment is proper under *Federal Rule of Civil Procedure* 56 "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## IV. ANALYSIS

Plaintiff has filed the present action pursuant to 42 U.S.C. § 1983 alleging that Defendants[3] violated his Eighth Amendment rights by creating a condition of confinement that posed an imminent danger to his health and welfare during his incarceration at Holman. (Doc. 1 at 13-18, 22-24). Specifically, Plaintiff claims that Defendants Culliver, Folks, Craft and Lang violated his Eighth Amendment rights by failing to protect him from unsafe conditions of confinement with a lack of correctional security monitoring in the area of the back hallway at Holman. (Doc. 1 at 15-17, 27-28, 31). Plaintiff also contends that these same Defendants failed to protect him by allowing inmates uncontrolled and unmonitored access to blades, knives and box cutters as part of the hobby craft/ leather shop program. (*Id.* at 22-25, 27, 32, 41).

It is undisputed that on August 6, 2008, Plaintiff was attacked by fellow inmate Dale Pounders, while Plaintiff was in the area of the back hallway at Holman. Inmate Pounders

---

[3] In this action, to the extent that Plaintiff seeks to sue Defendants in their official capacities, Defendants, as state officials, are entitled to absolute immunity from suit for damages in their official capacities. *See Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (state officials sued in their official capacities are protected from suit for damages under the Eleventh Amendment). Furthermore, "[q]ualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Dalrymple v. Reno*, 334 F.3d 991, 994 (11th Cir. 2003) (quoting *Hope v. Pelzer,* 536 U.S. 730, 739 (2002)). Until recently, the Court followed the mandatory procedure of *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part, Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 818, 172 L. Ed. 2d 565 (2009), which required the Court to determine whether the plaintiff's allegations, if true, established a constitutional violation and, if the first step was satisfied, to determine whether the right at issue was clearly established at the time of the alleged misconduct. While that procedure is now discretionary, as opposed to mandatory, *see Pearson, id.*, the Court finds it beneficial in this case. Having found herein that Plaintiff's allegations do not establish a constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201.

attacked Plaintiff with some unknown type of knife,[4] cutting Plaintiff's throat, causing a life threatening medical condition for Plaintiff. (Doc. 1 at 18; Doc. 40 at 16).

It is also undisputed that Defendants had no prior knowledge that Plaintiff was in any danger of attack from fellow inmate Dale Pounders, who was solely responsible for the attack on Plaintiff on August 6, 2008. (Doc. 1). In fact, notably, Plaintiff has not alleged that Plaintiff or Defendants had any prior knowledge that he was in any danger of attack from Pounders.

Section 1983 provides in pertinent part that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983 (1994).

The Eighth Amendment provides that, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." *U.S. Const. Amend. VIII.* The Eighth Amendment's proscription against cruel and unusual punishment prohibits prison officials from exhibiting "'deliberate indifference to a substantial risk of serious harm to an inmate." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).

---

[4] The weapon used by inmate Pounders in the attack against Plaintiff was never recovered. (Doc. 35, Ex. 3, Affidavit of Captain David Craft).

In *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189 (1989), the Supreme Court summarized a state's constitutional responsibilities with regard to inmates:

> [W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being. . . . The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs -- *e.g.*, food, clothing, shelter, medical care, and reasonable safety -- it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause.

*DeShaney*, 489 U.S. at 199-200 (citations omitted).

In order to prevail on his Eighth Amendment claim, Plaintiff must prove three elements: "(1) a condition of confinement that inflicted unnecessary pain or suffering, *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S. Ct. 2392, 2399, 69 L. Ed. 2d 59 (1981), (2) the defendant's 'deliberate indifference' to that condition, *Wilson v. Seiter,* 501 U.S. 294, 111 S. Ct. 2321, 2327, 115 L. Ed. 2d 271 (1991), and (3) causation, *Williams v. Bennett,* 689 F.2d 1370, 1389-90 (11th Cir. 1982)." *LaMarca v. Turner*, 995 F.2d 1526, 1535 (11th Cir. 1993).

In *Sims v. Mashburn*, 25 F.3d 980, 983 (11th Cir. 1994), the court described the first two elements as follows:

> An Eighth Amendment claim is said to have two components, an objective component, which inquires whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and a subjective component, which inquires whether the officials acted with a sufficiently culpable state of mind.

The objective component of an Eighth Amendment claim inquires whether the alleged wrongdoing amounted to the infliction of "unnecessary pain or suffering upon the prisoner." *LaMarca*, 995 F.2d at 1535. This standard requires that the alleged deprivation be "objectively,

'sufficiently serious.'" *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). The objective standard "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency. . ., but must be balanced against competing penological goals." *LaMarca*, 995 F. 2d at 1535 (quoting *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (internal quotation marks omitted)).

The subjective component of an Eighth Amendment claim generally "inquires whether the officials acted with a sufficiently culpable state of mind." *Sims*, 25 F.3d at 983-84 (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). This component "follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" *Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S. at 297).

Correctional officials may be held liable under the Constitution for acting with "deliberate indifference" to an inmate's safety when the official knows that the inmate faces a "substantial risk of serious harm" and with such knowledge disregards the risk by failing to take reasonable measures to abate it. *Farmer* , 511 U.S. at 828. However, "not … every injury suffered by one prisoner at the hands of another … translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834.

In defining "deliberate indifference," the Supreme Court in *Farmer* stated:

> We hold . . . that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. The court concluded that the "subjective recklessness" standard of criminal law is the test for "deliberate indifference" under the Eighth Amendment. *Id.* at 839-40.

8

There is no liability for "an official's failure to alleviate a significant risk that he should have perceived but did not. . . ." *Farmer*, 511 U.S. at 838. It is not enough that a plaintiff proves that the defendants should have known of the risk; conscious awareness is the key. *See, e.g., Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996). "[A]n officials's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

"'Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence.'" *Hale v. Talapoosa County*, 50 F.3d 1579, 1583 (11th Cir. 1995) (quoting *Farmer*, 511 U.S. at 842). "Thus, 'a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Id.* (quoting *Farmer*, 511 U.S. at 842). However, "'deliberate indifference' entails more than mere negligence.'" *Farrow v. West*, 320 F.3d 1235, 1245 (11th Cir. 2003).

> In interpreting *Farmer* and *Estelle,* this Court explained in *McElligott* that "deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *McElligott,* 182 F.3d at 1255; *Taylor,* 221 F.3d at 1258 (stating that defendant must have subjective awareness of an "objectively serious need" and that his response must constitute "an objectively insufficient response to that need").

*Id.* at 1245-46.

Indeed, a prison official's duty under the Eighth Amendment is to ensure "reasonable safety," a standard that incorporates due regard for prison officials' "unenviable task of keeping dangerous men in safe custody under humane conditions." *Farmer*, 511 U.S. at 844-45 (citations

9

omitted). "Whether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." *Id.*

"[A] prison custodian is not the guarantor of a prisoner's safety." *Purcell ex rel. Estate of Morgan v. Toombs County, Ga.*, 400 F.3d 1313, 1321 (11th Cir. 2005) (citations omitted). A constitutional violation occurs only "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not 'respond[ ] reasonably to the risk.' … A plaintiff must also show that the constitutional violation caused his injuries." *Marsh v. Butler County*, 268 F.3d 1014, 1028 (11th Cir. 2001) (en bank) (internal citations omitted).

"We accept that an excessive risk of inmate-on-inmate violence at a jail creates a substantial risk of serious harm; 'occasional, isolated attacks by one prisoner on another may not constitute cruel and unusual punishment, [but] confinement in a prison where violence and terror reign is actionable. A prisoner has a right, secured by the eighth ... amendment[ ], to be reasonably protected from constant threat of violence and sexual assault by his fellow inmates[.]'" *Purcell*, 400 F.3d at 1320-21 (quoting *Woodhous v. Virginia*, 487 F.2d 889, 890 (4th Cir. 1973)). Regarding substantial risk of serious harm, "[t]his objective standard 'embodies "broad and idealistic concepts of dignity, civilized standards, humanity, and decency ...," ' but must be balanced against competing penological goals." *Id.* (quoting *LaMarca v. Turner*, 995 F.2d 1526, 1535 (11th Cir. 1993) (citations omitted).

"[P]rison administrators are charged with the responsibility of ensuring the safety of the prison staff, administrative personnel, and visitors, as well as the 'obligation to take reasonable measures to guarantee the safety of the inmates themselves.'" *Whitley*, 475 U.S. at 320 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27) (1984). "Prison administrators…should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their

judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (U.S. 1979).

Having set forth the general legal principles relevant to Plaintiff's claims, the Court now turns to the application of those legal principles to the facts before the Court.

A. <u>Back Hallway Claim</u>.

In his Complaint, Plaintiff alleges that he was attacked by fellow inmate Dale Pounders in part as a result of Defendants' failure to properly secure the area of the back hallway. Plaintiff claims that this area was inadequately staffed and secured until September 2, 2008, approximately one month following his attack. (Doc. 1 at 17). Specifically, Plaintiff states: "[w]ithout the presence of Correctional Security Personnel acting as a deterrent to illegal inmate behavior, the inmates had a free pass to assault, maim, and attack Correctional Personnel, as well as other inmates, including the Plaintiff." (*Id.*).

Plaintiff claims that it has been common knowledge to Warden Culliver since he first began his involvement with Holman, that the back hallway has had no security personnel stationed in the area, and further that the correctional officer monitoring the main hall for medication pick up does not have a clear view of all of the inmates waiting in the back hallway area. (Doc. 1 at 13-16). Plaintiff also complains that the officer on the main hall cannot see the back hallway entrance/exit doorway. (Id.).

Plaintiff avers that Warden Culliver is fully aware of the dangerousness of the back hallway area from the steel double doorway building entrance and exit, as since Defendant Culliver has been the warden of Holman, the area has had a history of inmate on inmate assaults. Plaintiff also complains that the security camera in the very back of the area is ineffective because it has no video-taping device attached to it and there are no correctional officers

assigned to monitor the system during the times inmates use the area. (Doc. 1 at 13-16). Plaintiff further contends that since Defendant Culliver became the warden of Holman, the number of inmate on inmate assaults in the area of the back hallway increased excessively, and that Mr. Culliver is "fully aware" of the number of inmates who have been critically injured on the back hallway while no correctional officer was present. (Doc. 1 at 13-16).

In response, Defendant Culliver has provided an affidavit addressing Plaintiff's claims about this area specifically averring that during his tenure as warden at Holman, he "took steps to decrease the amount of traffic" in the area of the "back hallway," "moving the Institutional Law Library and the Masjid" to "areas of the facility that could be better monitored." (Doc. 35, Ex. 1 at 2). Defendant Culliver acknowledges that the back hallway had no duty post officer, but states that it "was part of the duties of the rovers assigned to the main hall to monitor" the back hallway as well, and that "the officer assigned to the main hall [had] a clear view of the inmates waiting for pill call." (*Id.*).

Defendant Culliver also noted that there was, consistent with Plaintiff's allegations, a video camera in this area, and although this video did not record footage, "the camera monitor is located on a post that is manned 24 hours per day." (*Id.*). Warden Culliver averred that during "a great portion of the time except for feeding, the doors leading to the outside of the facility remained locked and thus no traffic was in this area." (*Id.* at 3).

The incident reports filed by Defendants indicate that during the years 2005 through 2010, there were a total of six assaults (including both with and without weapons) in the back hall, compared to a total of 44 assaults with weapons throughout the other parts of the prison during this time. (Doc. 69, Exs. 1-2). In 2005, there was one inmate on inmate assault in the back hall area, and the next assault in this area occurred in 2007, with a total of three incidents

during that year. (Doc. 69, Ex. 2). On August 6, 2008, Plaintiff was attacked in the area of the back hall, which was the only incident in that area during the year 2008. (*Id.*). The last incident in the back hall area of which this Court has any record occurred over a year later, on October 13, 2009. (Doc. 69, Ex. 2).

Initially, it is noted that Plaintiff presents no evidence that a lack of security in the back hallway actually posed an objectively substantial risk of serious harm to him. The total number of incidents occurring in this area of the prison do not appear to be disproportionate to any other part of the prison when considering the statistics provided to the Court.[5] Furthermore, the total number of inmate on inmate attacks in this area over this six year period simply do not reflect an objectively substantial risk of serious harm to Plaintiff. The evidence of frequency of inmate on inmate attacks in this area does not reflect an area that inmates would have to live in constant fear of harm or violence. *See Purcell*, 400 F.3d at 1320-21.

Additionally, based upon the evidence before the Court, while the attack on Plaintiff was vicious and extremely dangerous, it does not appear to be the result of any deliberate indifference on the part of Defendants. The attack on Plaintiff was the first and only attack in 2008, and appears to have been unexpected by Plaintiff as well as Defendants. Furthermore, Defendant Culliver has put forth evidence indicating an effort to provide additional safety measures in the area of the back hallway by relocating certain attractions and continuing to monitor the area with a security camera. (Doc. 35, Ex. 1 at 2).

---

[5] Defendants were ordered by the Court to provide information specifically as to all assaults, whether involving weapons or not, which have occurred in the back hallway from 2005 until the present. Additionally, Defendants were ordered to provide information as to only the assaults involving weapons occurring in all other areas of the prison from 2005 until the present. (Doc. 61).

The Court cannot find that these Defendants have acted unreasonably and thus these Defendants "cannot be found liable under the Cruel and Unusual Punishments Clause." *Farmer*, 511 U.S. at 844-45. Therefore, Plaintiff has failed to establish, either objectively or subjectively, this Eighth Amendment claim.

B. <u>Leather/Hobby Craft Knives Claim</u>.

In addition to the foregoing, Plaintiff also claims that Defendants failed to protect him and failed to provide him safe conditions of confinement by allowing the leather shop/hobby craft shop activities, through which inmates were able to obtain knives and razor blades without proper monitoring and security. (Doc. 1 at 22).

Plaintiff also asserts that Holman's leather shop, located on the main hallway, adjacent to the back hallway, allows inmates to order supplies, such as box cutters, and replacement blades, on a monthly basis, with no security policies in place to monitor the tools. (*Id.* at 23). He identifies the leather shop as being located in an area surrounded by a steel wire screen, with large as well as small, holes in it. (*Id.*). Furthermore, Plaintiff contends that the prison canteen sells wood-craft kits to prisoners wishing to purchase them, and that a "blind eye" is turned by the correctional staff to inmates in the possession of "deadly weapons and/or dangerous instruments in the dormitories while such inmates fashion and work on the wood kits they have purchased from the prison canteen." (*Id.* at 23-24). His presentation of evidence provides further that inmates are commonly allowed to personally possess razor sharp utility blades that have "been placed in clandestinely made wooden handles" so that they can work on their wood kits purchased from the prison canteen. (*Id.* at 24).

A contributing to the dangerous and unauthorized insertion of weapons into general population is the ability of prisoners who are not authorized to have "tools" to purchase the

14

utility blades from the inmates actually authorized to have them. (*Id.*). Plaintiff claims that Warden Culliver has "witnessed many inmates at different times in possession of utility blades that are in clandestine handles working on wood projects in the dormitory areas and has turned a blind eye to such occurrences." (*Id.* at 24-25). Plaintiff claims that the blades are "in the possession of untold numbers of inmates at Holman Correctional Facility." (*Id.* at 25). Plaintiff claims that there have been in excess of thirty assaults by inmates against inmates using box cutter type weapons since 1996. (*Id.*).

In support of his opposition to Defendants' motion for summary judgment, Plaintiff has submitted the affidavits of two inmates. First, Plaintiff has submitted the affidavit of a fellow inmate who avers that he has had a hobby craft locker since 1994, and that the policy related to the monitoring of the knives related to the hobby shop is not enforced. (Doc. 40 at 36, Affidavit of Gary Walker). Inmate Walker declares that he has ordered and received snap knife tools without having to turn in old or broken snap knife tools. Additionally, he claims that his hobby craft locker has not been inventoried in at least two years. (*Id.* at 37). Walker also states that, contrary to prison policy, the hobby craft shop is open for inmates to enter and leave freely, and that in the faith dorm, inmates are allowed to work on wood hobby craft in the dorm. (*Id*. at 37-39). Additionally, Plaintiff submitted an affidavit of fellow inmate Danny Jeffreys, who avers that following the attack on Plaintiff, he observed the attacker, Dale Pounders, pass the weapon used in the attack through a hole in the security screen that encases the leather shop.[6] (Doc. 40 at 42).

---

[6] Notably, there is no record of Mr. Jeffreys reporting this information to the prison at the time of the attack, and the weapon used in the attack was never recovered. (Doc. 35, Ex. 3, Affidavit of Captain David Craft).

In response, in addition to their affidavits, Defendants have submitted written policies reflecting rules governing the ordering and storing of knives and blades for hobby craft and leather work in the hobby shop, as well as a general search policy detailing the procedures for regular searches aimed at keeping Holman free of all contraband. (Doc. 35, Ex. 5, Doc. 33, Ex. 7, Doc. 35, Ex. 1, Affidavit of Warden Grantt Culliver, "The facility conducts daily searches and quarterly attempts to complete an institutional search."). Not only have Defendants submitted the written policies, but have also testified that the policies are enforced, although at a time prior to Defendant Culliver's role as warden, Warden Culliver acknowledges that such policies were not in place nor followed. (Doc. 35, Ex. 1). Warden Culliver states in his affidavit that "[t]he procedures for inmates assigned to the hobby shop were changed to restrict the use of hobby tools to the hobby shop," but that "[i]nmate Harrison is correct that at one time it was permissible for inmates to have a hobby knife in their possession for the express usage of working wood to make craft items. It should be noted that these blades were not issued to inmates and that inmates had the ability to take several razor blades that were issued for shaving to fashion a hobby knife or device that used to cut wood strips." (*Id.*).

A review of the records in this action indicate that during the years 2005 through 2010, a six year period, there have been at total of 50 inmate-on-inmate assaults with weapons at Holman. Given that during these years, Holman has housed between 830 and 990 inmates, this number does not appear extreme or such that would constitute a situation where "violence and terror reign" in this prison which could be actionable pursuant to the Constitution.[7] *See Purcell*, 400 F.3d at 1320; Doc. 69, Exs. 1-2.

---

[7] The Court notes the recent Eleventh Circuit opinion in *Bugge v. Roberts,* No. 10-14895-AA, 2011 WL 1885537 (11th Cir. May 18, 2011) (unpublished), in which the court reversed the district court's grant of summary judgment,

It is this Court's opinion that Plaintiff has presented no evidence that the hobby shop or leather programs posed an objectively substantial risk of serious harm to him. His evidence does not reveal the type of weapon used or its origin. (Doc. 35, Ex. 3). In addition, the statistical analysis of all knife-related assaults, does not establish a link between the operation of the hobby shop and leather programs (both being clearly beneficial to inmates) and the assaults reported. Although the attack on Plaintiff was unfortunate, he has not shown that he has lived in a prison under constant threat of inmate attack. Therefore, he has failed to show an objectively substantial risk of serious harm. [8]

Furthermore, even if Plaintiff's living condition could be considered objectively seriously dangerous, he has failed to show that Defendants were deliberately indifferent to his safety or failed to take reasonable steps to minimize the danger of assaults that existed within Holman prison. "'[D]eliberate indifference' entails more than mere negligence,'" *Farrow v. West*, 320 F.3d at 1245, and "… prison official[s] will only violate the Eighth Amendment if the[ir]

---

**as to Warden Roberts only**, on the claim that dangerous prison conditions posed an objectively substantial risk of serious harm in violation of the Eighth Amendment. In *Roberts*, an injured former inmate and the executor of the estate of another former inmate who was stabbed and beaten to death in a Georgia state prison filed a § 1983 action against prison officials alleging Eighth Amendment violations arising from prevalent inmate-on-inmate violence. (*Id.*). Plaintiffs presented evidence of racially charged robberies, hundreds of "weapons" found among inmates in the prison, a lack of discipline, and extreme gang violence being tolerated in the prison, and, notable to the court, the defendants did not contest the evidence or present any evidence to refute the allegations. (*Id.* at *5). Although finding that the district judge had erred in granting summary judgment to Warden Roberts, the Eleventh Circuit acknowledged that its decision constituted a "close call." (*Id.*) The present action does not present this Court with a "close call" on this issue because the unchallenged evidence shows that while some knives or blades made their way into the prison general population as Plaintiff alleges, the statistics of the facility do not reflect a prison in which inmates must live in constant fear of inmate attack. *See Purcell,* 400 F.3d at 1320. Moreover, Defendants have put forth evidence showing their attempts to enforce their policies safeguarding against the possession of weapons in the inmate population. (Doc. 33, Ex. 7, Doc. 35, Ex. 1). Following a review of the record and the law, it is decided that Plaintiff has not shown an objectively substantial risk of harm, and furthermore, even assuming that he had, he has not shown that these Defendants were deliberately indifferent to his safety. Thus, Plaintiff's Eighth Amendment claim is due to be dismissed.

[8] One option for inmates under constant threat of harm is to seek protective custody. There is no evidence showing that Mr. Harrison was ever denied protective isolation when he made such a request, if ever.

response to the conditions posing the substantial risk of serious harm is unreasonable." *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1029 (11th Cir. 2001) (citing *Farmer*, 114 S. Ct. at 1982-83).

Defendants have put forth substantial evidence of safety practices and procedures to avoid the presence of weapons in Holman. (Doc. 33, Ex. 7, Doc. 35, Ex. 5, Ex. 69, Ex. 5). In addition to the written policies, Warden Culliver stated in his affidavit that the "facility conducts daily searches and that "[i]nmates who are found to be in possession of contraband will receive disciplinary action." (Doc. 35, Ex. 1 at 5). Defendant Culliver went on to state that while he was warden at Holman "there were policies put into place to try and control the contraband and the institutional violence at the facility."

Considering all of Plaintiff's evidence, the Court is unconvinced that Plaintiff has shown an objectively substantial risk of harm, and, furthermore, that Defendants were deliberately indifferent to his safety by their policies with regard to the hobby craft/leather shop. Therefore, this Eighth Amendment claim is also due to be dismissed.

## V. CONCLUSION

Based on the foregoing, the Court concludes that Defendants, Warden Grantt Culliver, Assistant Warden Sylvester Folks, Captain David Craft, and Correctional Officer Allen Lang are entitled to summary judgment in their favor on all claims asserted against them by Plaintiff.

Accordingly, it is recommended that Defendants' Motion for Summary Judgment be granted, that this action be dismissed with prejudice, and that judgment be entered in favor of Defendants and against Plaintiff on all claims. It is further recommended that Plaintiff's pending motions (Docs. 36, 37, 70, 75) be denied as MOOT.

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

DONE this 26th day of August, 2011.

/sWILLIAM E. CASSADY
UNITED STATES MAGISTRATE JUDGE

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND FINDINGS CONCERNING NEED FOR TRANSCRIPT**

l.   *Objection*.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F. 2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F. 2d 404 (5th Cir. Unit B, 1982) (*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days[9] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.   *Transcript (applicable Where Proceedings Tape Recorded)*.  Pursuant to 28 U.S.C. § 1915 and FED. R. CIV. P. 72(b), the Magistrate Judge finds that the tapes and original records in

---

[9] Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]"  Fed. R. Civ. P. 72(b)(2).

19

this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.